## WOLFF v. COHEN et al. (No. 1225.)*

(Court of Civil Appeals of Texas. Beaumont.
Feb. 20, 1926. Rehearing Denied
March 3, 1926.)

**1. Action ⊙➞62—Cross-action by owners for whatever damages brokers might recover against them against purchaser for inducing sale of property to him through others held not premature, because no verdict had been rendered against owners.**

In brokers' action for commissions for finding purchaser for land, cross-action by owners for whatever damages brokers might recover against them against purchaser for inducing sale of property to him through others grew out of same transaction, and hence was not premature, because no verdict had been rendered against owners.

**2. Action ⊙➞50(1)—General policy is to permit all controversies of legal or equitable cognizance, relating to one subject-matter, to be litigated in one suit.**

General policy of law is to permit all controversies of legal or equitable cognizance, relating to one subject-matter, and as affecting all interested persons, to be litigated and settled in one suit, if it can be done without undue prejudice to rights of any such parties.

**3. Action ⊙➞48(1).**

Actions ex contractu and ex delicto may be joined, if they arise out of, or are related to, same transaction.

**4. Fraud ⊙➞41 — Landowner's cross-action against purchaser held to sufficiently allege damages for fraud in inducing sale of property to him through others after he had been procured by brokers as against general demurrer.**

In broker's action to recover commission for procuring purchaser for land, landowner's cross-action against purchaser, alleging that he fraudulently induced them to sell land through others to him after he had been procured as purchaser by plaintiffs at price less than that for which it would have been sold through plaintiffs, held sufficient to allege damages as against general demurrer.

**5. Fraud ⊙➞31.**

One may elect to rescind or to perform contract induced by fraud and to sue for damages.

**6. Contracts ⊙➞270(2).**

One seeking to rescind contract for fraud or deceit must act promptly.

**7. Contracts ⊙➞94(1).**

In suit on contract, fraud in inducement of contract may be set up.

**8. Fraud ⊙➞31—Owners might perform contract for sale of land to purchaser after discovery of fraud, and hold purchaser liable for damages sustained by owners to brokers in performance of contract.**

Owners, who became liable to brokers for commissions in procuring purchaser for land which owners were induced through fraud to sell to purchaser through others, might elect to perform their contract with purchaser after they discovered fraud, and to hold him liable for damages sustained by them in their performance of the contract.

**9. Pleading ⊙➞382(1)—Defense of waiver of fraud in inducing sale of land to purchaser, thereby rendering owners liable to brokers for commissions, held unavailable under general denial.**

In brokers' action for commissions, with owners' cross-action against purchaser for fraudulently inducing them to sell land to him through others, defense of waiver of fraud held unavailable to purchaser under general denial.

**10. Estoppel ⊙➞110—Pleading ⊙➞130—Waiver, estoppel, and kindred defenses in nature of confession and avoidance must be pleaded.**

Defenses of waiver, estoppel, and kindred ones are pleas in nature of confession and avoidance, affirmative in nature, and must be pleaded.

**11. Fraud ⊙➞35—Purchaser's fraud in inducing owner to sell land to him, thereby depriving brokers of commissions, held not waived by owner's performance of contract after knowledge of fraud.**

Owners, who became liable to brokers for commissions when induced by fraud of purchaser to sell land to him through others, held not to waive fraud by performing contract after knowledge of fraud, since owners might elect to hold purchaser liable for damages sustained by them in carrying out contract.

**12. Appeal and error ⊙➞930(3)—Issue not requested to be submitted is presumed, on appeal, to have been found in favor of judgment.**

Issue not requested to be submitted, though it can be involved under pleadings, will be presumed, on appeal, to have been found in favor of judgment.

**13. Evidence ⊙➞434(8)—Fraud and deceit in inducing execution of contract may be shown by parol evidence.**

Execution of contract, induced by fraud, may be shown by parol evidence, even though evidence contradicts written contract; but fraudulent representations must relate to past or present facts, and not be expression of mere opinion or something that was promised in future.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by F. W. Brown and another against Ben Cohen and others, in which defendants Ben Cohen and Adolph Wagner filed a cross-action against defendant Boris Wolff. Judgment for the plaintiffs against defendants Cohen and Wagner and for such defendants on their cross-action against defendant Wolff, and the last-named defendant appeals. Affirmed.

Edward H. Bailey and Woods, King & John, all of Houston, for appellant.

---

⊙➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 5, 1926.

Amerman & Sears, of Houston, for appellees.

HIGHTOWER, C. J.  This suit was brought by F. W. Brown and J. W. Holloway, as plaintiffs, against Ben Cohen, Adolph Wagner, and Boris Wolff, as defendants, in one of the district courts of Harris county. For their cause of action as against defendants Cohen and Wagner, the plaintiffs alleged, in substance, that on or about April 1, 1922, Cohen and Wagner listed with plaintiffs, who were real estate agents and brokers in the city of Houston, two certain lots in the city of Houston at that time owned by Cohen and Wagner for sale on commission; that on or about April 23, 1922, plaintiffs found the defendant Boris Wolff, and that he became at once interested in the property that Cohen and Wagner had listed with plaintiffs for sale, and that Wolff decided to buy the property, and would have bought it through plaintiffs, and would have paid $30,000 for it, on which amount plaintiffs would have realized a commission of 5 per cent., had not defendants Cohen and Wagner taken the property out of the hands of the plaintiffs and effected, through their own efforts, a sale of the property to one Edward H. Bailey, who was in truth and in fact acting not for himself in purchasing the property, but who was acting as the agent and attorney for the defendant Boris Wolff, and that the sale to Bailey was for the sum of $26,750. Plaintiffs alleged further that by reason of the facts just stated they were entitled to recover a commission as against Cohen and Wagner of 5 per cent. on $30,000 but, if not, that they were entitled, in any event, to a commission of 5 per cent. on the amount that the property was actually sold for to Bailey as the agent of Wolff.

The plaintiffs Brown and Holloway, for cause of action as against Wolff, further alleged, in substance, that Wolff and one Moise Shornstein and the said Bailey, the two latter being the agents and acting for Wolff, entered into a fraudulent conspiracy with the defendants Ben Cohen and Adolph Wagner for the purpose and with the intention of defrauding and defeating plaintiffs out of their commission on the sale of the property by pretending that Bailey was the actual purchaser of the property and not their client, Boris Wolff, and that, because of such fraud and conspiracy on the part of Boris Wolff and his agents Shornstein and Bailey, plaintiffs ought to recover against Boris Wolff and Cohen and Wagner, jointly and severally, the commission that they had earned as real estate brokers in finding and producing the defendant Wolff as a purchaser of the property.

All defendants filed answer to the plaintiffs' petition; all of them interposing a general demurrer and certain special exceptions and general denial and other special pleas not necessary to further mention. Defendants Ben Cohen and Adolph Wagner, after answering to the plaintiffs' petition, filed a cross-action against their codefendant, Boris Wolff, in which, briefly stated, Cohen and Wagner alleged, in substance, as follows: That on or about April 26, 1922, one Moise Shornstein approached them with a view to purchasing the two lots that had been listed with the original plaintiffs for sale, at which time the plaintiffs, so far as Cohen and Wagner knew, had not found any purchaser for their property; that Shornstein stated and represented to them (Cohen and Wagner), that he was interested in the property as an investment, and that he wanted to buy it for himself as his own investment, and, in substance, that no one else was interested in the property with him; that Shornstein stated and represented to them (Cohen and Wagner) that if they sold the property to him there would be no agent's commission to pay, and that, therefore, they could afford to sell him the property for a less sum of money than they could afford to sell for through agents; that these negotiations with Shornstein were finally concluded by his agreeing to purchase the two lots from Cohen and Wagner for a consideration of $26,750, and that Cohen and Wagner entered into a written contract with him (Shornstein) by the terms of which they agreed to sell to him, or his nominee, the property for $26,750; that at the time they entered into this executory contract, or earnest money receipt as some of the witnesses call it, they believed in good faith that Shornstein was the actual purchaser of the property and was buying it for himself as an investment, as he had represented to Cohen and Wagner, and that if they sold it to him they would not have any agent's commission to pay, but that the amount of $26,750 would be net to them, as stated and represented by Shornstein; that as a matter of fact they would not have contracted to sell the property to Shornstein for the amount they did agree to sell for, had they known that Shornstein was acting at the time as the agent and stool pigeon of Boris Wolff; that as a matter of fact Shornstein was acting and contracting to buy the property solely as the agent and stool pigeon of Wolff, and was not buying it for himself, nor interested to any extent in the purchase thereof; that his statements and representations that he was buying the property for himself, or as an investment of his own, were wholly false; and that such statements were made with the wicked and fraudulent purpose of inducing Cohen and Wagner to enter into the executory contract to sell him the land as they did for $26,750.

Cohen and Wagner further alleged that about May 26, 1922, approximately 30 days after the executory contract was entered into between them and Shornstein, the latter demanded that Cohen and Wagner make a general warranty deed conveying the two lots

that they had obligated themselves to sell to him or his nominee to Edward H. Bailey, who was also the agent and attorney for Boris Wolff, and that, having bound themselves by the written contract to convey the property to Shornstein, or his nominee, they felt obligated to carry out the contract and convey the property to Bailey, who had threatened to sue them for specific performance of the contract if they refused to make the deed to Bailey, although they alleged that at that time they suspicioned that Wolff was, in fact, the real purchaser; but that they did not know and could not know for certain that he was, and that, in this situation, they (Cohen and Wagner) went ahead and performed their executory contract between themselves and Shornstein, and conveyed, by warranty deed, the two lots to Edward H. Bailey, who, on the same day, conveyed the property to Wolff, and who, along with Shornstein, was acting all the way through as the agent and attorney for Wolff.

Cohen and Wagner then alleged further in their cross-action that, by reason of the fraud and conspiracy between Wolff and his agents, Shornstein and Bailey, they were induced to execute the executory contract to Shornstein as they did, and that in consequence of that fraud and deceit they were damaged in whatever sum the plaintiffs Brown and Holloway might recover against them in this suit, and they prayed for recovery against Wolff accordingly.

Wolff answered the cross-action only by general demurrer and general denial. The case was tried with a jury and was submitted upon special issues, and upon the answers judgment was rendered in favor of the original plaintiffs Brown and Holloway and against Ben Cohen and Adolph Wagner, the appellees here, for $1,448.23, and judgment was also rendered upon the verdict in favor of Cohen and Wagner on their cross-action for the same amount against the defendant Wolff, and Wolff alone prosecutes this appeal from that judgment.

One of the special issues submitted relative to the cross-action of Cohen and Wagner against Wolff was as follows:

"Did the defendants Cohen and Wagner, at the time of the earnest money contract, from all the acts and conduct of said Shornstein and Bailey, believe that the said Shornstein was buying said property for himself as an investment, and that he was not acting for defendant Boris Wolff? You will answer this 'They did' or 'They did not,' as you may find the facts to be."

The jury answered, "They did."

Another special issue relative to the cross-action was as follows:

"Were they (Cohen and Wagner) induced to enter into said contract of sale with Shornstein in reliance upon said statements and conduct? Answer 'Yes' or 'No,' as you may find the facts to be."

To this issue the jury answered, "Yes."

[1] In the trial below, appellant, Wolff, presented and urged his general demurrer upon two grounds, but it was overruled as to both, and that action is challenged in this court. Appellant's first proposition asserting error in overruling his general demurrer is as follows:

"A cause of action must exist at the time suit is commenced, and rights accruing subsequent to the commencement of the suit cannot be urged as a cause of action, and the pleadings in such a case are subject to general demurrer if urged in time in the trial court, and the court erred in refusing to sustain the general demurrer of appellant, Wolff, to the cross-action of appellees."

Thus it will appear at once that by this proposition appellant contends that the cross-action of Cohen and Wagner against Wolff was premature and could not be maintained, for the reason that at the time of its filing no verdict or judgment had been rendered in favor of the original plaintiffs Brown and Holloway against Cohen and Wagner, and that, therefore, there was no cause of action in them that they could assert as against appellant's general demurrer. We have concluded that appellant's contention on this point cannot be sustained, but must be overruled.

[2, 3] It seems clear from the authorities in this state that it is the general policy of our law to permit all controversies of legal or equitable cognizance, relating to one subject-matter, and as affecting all interested persons, to be litigated and settled in one suit, where this can be done without undue prejudice to the rights of any of such parties. The purpose, it is said, is to avoid circuity of action and multiplicity of suits and subsequent expense and vexation and delay of ultimate justice. And it is said that this general rule and policy allows joinder in respect to matters ex contractu and ex delicto, if they arise out of or are related to the same transaction. Fidelity, etc., Co. v. Fossati, 80 S. W. 74, 97 Tex. 497; Adams v. Bank (Tex. Civ. App.) 178 S. W. 993; Kemendo v. Fruit Co., 131 S. W. 73, 61 Tex. Civ. App. 631; Blum Milling Co. v. Moore, etc., Grain Co. (Tex. Com. App.) 277 S. W. 78.

It is clear, as reflected by this record, that the rights and claims of the parties to this controversy grew out of the same transaction; and, under the rule as just stated, the general demurrer urged by appellant, Wolff, on the ground that the cross-action of Cohen and Wagner did not exist or was premature at the time of its filing, was properly overruled.

[4] Appellant next contends, in substance, that it does not appear from any allegation of fact stated in the cross-action against him that Cohen and Wagner sustained any damages by reason of the alleged fraud and deceit practiced upon them by appellant, and that, therefore, the general demurrer was errone-

ously overruled. In this connection, counsel for appellant point out that it is not alleged in the cross-action that Wolff, appellant, would have purchased the property of Cohen and Wagner at the price at which they sold it to him plus any commission they might have to pay to an agent, or that appellant would have purchased the property at the price the owners had theretofore asked him for it if they had not sold it to him for a less price, and that it was not shown that the price for which the property was sold was less than its full market value. For these reasons, able counsel earnestly contend that no facts were stated in the petition showing any recoverable measure of damages growing out of the fraud and deceit practiced upon the cross-plaintiffs by appellant.

It is true that there was no allegation in the cross-action as to the market value of the property that was sold by Cohen and Wagner to appellant, nor was it alleged that Wolff would have paid more for the property than he did actually pay, had Cohen and Wagner declined to sell it to him for the amount which was paid. Therefore, if counsel for appellant are correct in their contention, that it was necessary, in order to show a cause of action, that the property was sold to appellant for less than its market value by reason of the deceit and fraud practiced upon the owners, or that appellant would have paid more for the property than he did, had the owners declined to sell it to him for the price they did, then the demurrer was erroneously overruled. After careful consideration of this contention, we have reached the conclusion that it cannot be sustained. The cross-action, unquestionably, is based upon actual fraud and deceit alleged to have been practiced upon Cohen and Wagner by appellant, and they claim that the true legal measure of damages recoverable by them in consequence of such fraud and deceit was the loss sustained by them in consequence of that fraud and deceit, and they say that this loss was the amount of money that they are compelled to pay to the original plaintiffs Brown and Holloway in consequence of appellant's fraud and deceit in inducing them to enter into and execute the executory contract to Shornstein as they did; that, had appellant and his agents Shornstein and Bailey not been guilty of this fraud and deceit, they would not have had to pay to the original plaintiffs Brown and Holloway, any amount as their commission for finding and producing a purchaser of the property; that if, in fact, Shornstein had been the actual and real purchaser of the property, as he represented he was to induce the execution of the executory contract, then appellees would not have been compelled to pay the original plaintiffs anything, even though Shornstein had afterwards sold the property to Bailey or Boris Wolff.

In support of his contention that no facts

were stated in the cross-action showing any loss or damage to Cohen and Wagner, and that, therefore, the general demurrer was good, counsel for appellant have cited a number of cases, which they contend support this contention. One of these authorities is the case of George v. Hesse, 93 S. W. 107, 100 Tex. 47, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456. In that case the transaction that gave rise to the suit was an exchange of property between George and Hesse. Hesse was the plaintiff and sued George to recover damages, which he alleged he had sustained in consequence of fraud and deceit on the part of George, by which he (Hesse) was induced to make the exchange. The substance of his allegations as to fraud and deceit was that George falsely and fraudulently represented to him that there was a "water gusher" on the land that Hesse would get in the exchange; that as a matter of fact there was no water gusher on the George land; and that the market value of the land with a water gusher on it would have been much greater than it was without the gusher on it, and Hesse prayed to recover against George the difference in market value, claiming such to be his loss, and the measure of his damages. George denied this claimed measure of damages, and contended that, if Hesse was damaged at all by the exchange of the properties, his legal measure was the difference in market value between the land he received and that parted with. Our Supreme Court, through Chief Justice Gaines, held that Hesse's legal measure of damages was as contended by George, for the reason, as said by the court, that such difference in market value between the two properties was the extent of Hesse's loss in that transaction. Now it is clear that the opinion in the George-Hesse Case has reference to fraud and deceit practiced by one of the parties upon another in the exchange of properties, and the question here involved, as we see it, was not touched by the court in that case, and we get no light from the opinion in that case touching the question here. Nearly all of the cases cited by able counsel for appellant are cases where property was exchanged between the parties and one of them afterwards claimed that he had been defrauded by the other in making the exchange, and the question before us now was not decided, as we think, in any of those cases. In fact, we do not believe that any authority cited in the brief of counsel for either side in this case is exactly in point on the question here raised. Counsel for appellant also lay much stress upon the decision of the Texarkana Court of Civil Appeals in Hope et al. v. Shirley, 187 S. W. 973. We have carefully read several times the opinion in that case, and have concluded that the point now under consideration was not raised in that case, and doubt very much whether it was in the mind of the court in arriving at the conclusion there reached.

But, if the opinion in Hope v. Shirley, upon the facts as there pleaded as the plaintiff's cause of action, can be considered as sustaining appellant's contention in this case, then we would have to dissent from the holding in that case, notwithstanding this court's great respect for the court delivering that opinion. We think, upon the facts as here pleaded and proved, and as established by the jury, the true measure of damages sustained by Cohen and Wagner in consequence of the fraud and deceit practiced by appellant and his agents was the loss that they were caused to sustain in performing the executory contract of sale that they made with Shornstein, as the admitted agent and coconspirator of appellant, and that that loss was the amount of money that they were compelled to pay Brown and Holloway, as fixed by the verdict and the judgment in this case.

Counsel for appellant urge, however, with much plausibility, that, at the time Cohen and Wagner performed the executory contract by executing a deed to Bailey, Cohen and Wagner then knew that Wolff was, in fact, the purchaser of the property and had full knowledge of the fraud and deceit that had been practiced upon them, if any, by Wolff and by his agents and attorney Shornstein and Bailey, in inducing them to enter into the executory contract, and counsel, therefore, contend, in substance, that Cohen and Wagner should have declined to make the deed to Bailey for the amount of $26,750, as they did, if they desired to save themselves from liability to the plaintiffs for their commission. In support of this contention, counsel for appellant cite a number of authorities, which hold, in substance, that, where one is threatened with injury or damage, it becomes his duty to use ordinary care and diligence to prevent such injury and damage, and, that if he fails to use such care and diligence, he cannot recover any amount beyond what he could have saved himself by such care and diligence. Many of these cases cited in this connection were suits for personal injuries and injuries to property, and the defense of contributory negligence and want of diligence, etc., was interposed by the defendant to defeat the claimed liability. We think that none of them touch the question here under consideration.

[5-7] It seems to be well settled in this state that, where one is induced by fraud and deceit to enter into an executory contract, he may, after discovering the fraud and deceit of the other party, go on and perform the contract and hold the wrongdoer liable for such damages as flow from the fraud and deceit; in other words, it seems to be the law, as announced by our Supreme Court and many of the Courts of Civil Appeals of this state, as well as eminent textwriters, that one, who has been induced to enter into a contract by fraud and deceit of another, has his election as to whether he will rescind that contract or will go on and perform under it and sue the wrongdoer for such damages as he has sustained in consequence of the fraud and deceit. If he elects to rescind the contract, he must act promptly and he may stand upon the defense that he was fraudulently induced to make it if the wrongdoer seeks specific performance, or seeks damages for failure to perform. This rule seems to have been clearly announced by our Supreme Court in Kennedy v. Bender, 135 S. W. 524, 104 Tex. 153, and the court there approves a holding of the Supreme Court of California in Schmidt v. Mesmer, 48 P. 54, 116 Cal. 271. Judge Brown, among other things, there said:

"It has sometimes been contended that, when a party has been induced to enter into a contract by fraud of the other party, his only remedy is to rescind the contract, and sue to recover what he has parted with, or set up the fraud as a defense if he is himself sued on the contract. It is thoroughly settled, however, that he has an election of remedies, and that, while he may rescind, he is not bound to do so, but may hold the other party to the contract, and sue him to recover the damages which he has sustained in consequence of the fraud. If he elects to rescind, he must act promptly after he acquires the knowledge of fraud. Any conscious recognition of the contract as being binding with full knowledge of the fraud will bar the right to rescind. But the rule is quite otherwise where the defrauded party elects to stand by the contract and sue for his damages, as in the present case. In such case he may keep what he has received, and may continue in all things to treat the contract as binding upon him, doing what he is required by the terms of the contract to do. This necessarily results from his right to affirm and stand by the contract and still recover damages for fraud and deceit."

See, also, Grabenheimer v. Blum, 63 Tex. 369.

In Bigelow on Fraud, at page 184, the author says:

"It is well established that if a party, with full knowledge that a fraud has been perpetrated upon him in a particular transaction, confirm the transaction by making new arrangements or engagements respecting it, or by retaining and using the subject of it after knowledge, or otherwise recognize it as binding, he thereby waives the right to treat it as invalid, and abandons his right to rescind if it be a case of contract, or to redress if it be a tort not attended with a contract with the wrongdoer. If the fraud result in a contract, performance of the same, after discovering that it was fraudulently obtained by the opposite party, does not preclude a person from suing for damages on account of such fraud. The injured party may retain the benefits of the contract, confirm its validity, and still recover damages for the fraud by which he was induced to make it; or he may recoup any damages which he has sustained, if the opposite party sue him for money due on the contract, or for other failure to perform it."

See, also, Winters v. Coward (Tex. Civ. App.) 174 S. W. 940; Benton v. Kuykendall

(Tex. Civ. App.) 160 S. W. 438; Guinn v. Ames. 83 S. W. 233, 36 Tex. Civ. App. 613.

[8] Now, if the appellees Cohen and Wagner were induced by fraud and deceit practiced upon them by appellant and his agents to make the executory contract for the sale of their property to Shornstein, as pleaded by them and as established by the verdict of the jury, which is not questioned by appellant here, and if Cohen and Wagner elected to go on and perform the executory contract by making the deed to Bailey, who was Wolff's agent and attorney, and who, they alleged, was threatening suit for its specific performance, then we hold, under the rule, that Cohen and Wagner had the right to so elect and to still hold appellant liable for the damages sustained by them in carrying out the contract. True, the evidence shows, we think, that Cohen and Wagner, at the time they made the deed to Bailey, were aware of the fraud and deceit that had been practiced upon them by appellant and his agents in securing the executory contract, but, if they had an election of remedies, as we hold they did, it does not follow, we think, that appellant can successfully say and contend that Cohen and Wagner should have elected to rescind the executory contract, if they feared a loss by executing it, rather than to have gone on and performed it. Such is one of appellant's contentions, and, if they be sound, then the election of remedies did not lie with Cohen and Wagner, but, in effect, with appellant, the wrongdoer. Therefore, upon the authorities hereinbefore cited, we hold that Cohen and Wagner had the right to perform the executory contract after they had discovered the fraud and deceit practiced upon them, and to hold appellant liable for the damages and loss sustained by them in their performance of the contract.

[9-11] Able counsel for appellant further contend, however, that the undisputed proof in this case shows that Cohen and Wagner, even if they had an election of remedies, as we have just discussed, waived the fraud and deceit that was practiced upon them by appellant and his agents by making the deed to Bailey after a full knowledge of such fraud and deceit. To this counsel for appellees reply, first, that appellant interposed no defense of waiver in his pleadings; and, second, that waiver is largely a question of intention on the part of one sought to be charged with it, and that the evidence in this case would not have sustained a finding of waiver by Cohen and Wagner, even if that defense had been pleaded by appellant. We agree with counsel for appellee that, in the absence of any plea of waiver by appellant, that defense was not open to him and cannot be successfully urged here. As we have stated in the beginning, the only pleading to the cross-action filed by appellant was his general demurrer and general denial. Under his general denial he could not rely upon the defense of waiver, which, as we understand it, is a plea in the nature of confession and avoidance. Of course, under his general denial appellant could have made proof of any fact that would go to meet the cross-action as pleaded, but such defenses as waiver and estoppel and kindred ones are held to be pleas in the nature of confession and avoidance and are affirmative defenses in their nature, and a party litigant who would rely upon them must plead them. Scarbrough v. Alcorn, 12 S. W. 72, 74 Tex. 358; Produce Co. v. Turner (Tex. Sup.) 27 S. W. 583; Howard v. Metcalf (Tex. Civ. App.) 26 S. W. 449; Rail v. Bank, 22 S. W. 865, 3 Tex. Civ. App. 557; Guinn v. Ames, 83 S. W. 232, 36 Tex. Civ. App. 613. In view of these authorities, we overrule appellant's contention that his fraud and deceit in inducing Cohen and Wagner to enter into the executory contract was waived when they performed the contract by making the deed to Bailey after knowledge of the fraud and deceit.

[12] But, if waiver had been pleaded by appellant, we think that under the facts in this case it could not be held as a matter of law that Cohen and Wagner waived the fraud and deceit of appellant by making the deed to Bailey. The question of waiver, as said by the authorities, is largely one of fact, and, unless it clearly appeared from the evidence in this case that it was the intention of Cohen and Wagner to waive the fraud and deceit practiced upon them by appellant, such defense was not established. No such issue was requested to be submitted by appellant to the jury, and if it could be involved, under the pleadings, it must be presumed in favor of the judgment that the trial court determined the issue against appellant's contention.

Appellant makes the further contention, in substance, that it was impossible for appellees to have been deceived, as they claim they were, in making the executory contract with Shornstein. Counsel say that this was so because it was provided in the executory contract expressly that Cohen and Wagner bound themselves to make the deed to Shornstein or his nominee, and that, therefore, appellees knew that they would have to make a deed, if they complied with the executory contract, to any person that Shornstein might nominate or designate as the ultimate purchaser, and that this did not exclude, but included Wolff. Then counsel say, in substance, that, since it is not contended by appellees that this contract does not express the true intentions of the parties to it, there was no way by which appellees could attack the contract and claim that they were misled or deceived in making a contract ostensibly to convey to Shornstein, but, in fact and reality, a contract to convey to Wolff. As we construe appellees' pleading in this case, they very emphatically and expressly alleged that this executory contract was induced by fraud and deceit, and that it would never

have been entered into by them but for such fraud and deceit. Therefore counsel for appellant, it seems to us, are mistaken when they say that it is not contended or alleged that the executory contract does not express the true intentions of the parties to it.

[13] As we understand, it is the rule in this state that, where the execution of a contract by one of the parties is induced by the fraud and deceit of the other, then such fraud and deceit may be shown by parol evidence, even though such evidence contradicts the written contract itself. Of course, in order to make applicable this rule, the fraudulent representations would have to relate to past or present facts, and not be the expression of a mere opinion or something that was promised in the future. We do not understand that any of the authorities cited by counsel for appellant in connection with this contention hold contrary to the rule as we have just announced it. American Law Book Co. v. Fulweiler (Tex. Civ. App.) 219 S. W. 883; Willett v. Browning Engineering Co. (Tex. Civ. App.) 186 S. W. 354; same case (Tex. Com. App.) 228 S. W. 153; Hollifield v. Landrum, 71 S. W. 982, 31 Tex. Civ. App. 187; Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 726; same case, 108 S. W. 1165, 101 Tex. 473; Avery v. Staples (Tex. Civ. App.) 183 S. W. 43; Kirby v. Thurmond (Tex. Civ. App.) 152 S. W. 1099.

While we have not discussed each proposition separately advanced by appellant for reversal, what we have said disposes of them all, and it is our conclusion that the judgment must be affirmed, and it has been so ordered.